## UNITED STATES v. ROSOFF et al.

Circuit Court of Appeals, Second Circuit.
July 2, 1928.

No. 357.

1. **Intoxicating liquors ⬦277—Court held authorized, not only to enjoin dealing in liquor at designated premises, but also within district, under circumstances (National Prohibition Act, § 23 [27 USCA §§ 35-37]).**

National Prohibition Act, § 23 (27 USCA §§ 35-37), *held* to authorize court to enjoin taking or accepting orders or selling intoxicating liquor anywhere within district, on showing that defendants, besides dealing in liquor on designated premises, also accepted orders for liquor to be delivered elsewhere; section 22, authorizing injunction to restrain illegal use of property, not limiting former section to itinerant persons.

2. **Intoxicating liquors ⬦275—Evidence as to intention to continue violations held to authorize injunction against dealing in liquor in general within district (National Prohibition Act, § 23 [27 USCA §§ 35-37]).**

In suit under National Prohibition Act, § 23 (27 USCA §§ 35-37), for abatement of liquor nuisance and for injunction restraining dealing with liquor within district, evidence in respect to intention to continue violation elsewhere and at present premises *held* sufficient to authorize injunction in general within district.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the United States against Ida Rosoff and another, doing business under the trade-name and style of The Patrician. From that portion of the decree enjoining defendants from soliciting or taking or accepting orders for the sale of, or selling, possessing, or keeping intoxicating liquor anywhere within Southern District of New York, defendants appeal. Affirmed.

Suit by the United States, under bill of complaint verified July 23, 1927, against Ida Rosoff and Lena Schultz for abatement of liquor nuisance on premises No. 353 Riverside Drive, borough of Manhattan, and also for an injunction restraining them from taking or accepting orders for the sale of and from selling intoxicating liquor on said premises or anywhere else in the Southern District of New York. The decree closed the premises in question for three months and enjoined the defendants from soliciting, or taking, or accepting orders for the sale of, or selling, possessing, or keeping, intoxicating liquor on said premises, or anywhere else in the Southern District of New York. From the portion of the decree which enjoined the defendants from soliciting, or taking, or accepting orders for the sale of, or "selling, possessing, or keeping intoxicating liquor * * * anywhere else in the Southern District of New York," defendants appeal. Affirmed.

On April 23, 1927, Aileen Weller, a detective, who was employed by persons owning premises adjoining No. 353 Riverside Drive, called on the defendant Schultz and arranged the terms of a contract for a wedding anniversary party of 28 to be held on the premises on May 5th. The question of liquor was discussed with Mrs. Schultz, and when Mrs. Schultz told Aileen Weller that she would arrange to get the liquor through a bootlegger, Mrs. Weller ordered a certain amount. The party was held on May 5th, and Mrs. Weller paid $56 to Meyer, the manager of the place, for the liquor. There was liquor on the table in the main banquet room and cocktails made downstairs were served there.

While the party was in progress, O'Connell, a prohibition agent, asked Mrs. Schultz if she could procure more liquor. She referred him to a gray-haired waiter, who brought him a gallon for $20. Jewesson, a private detective, on the same occasion bought liquor twice during the evening from a waiter whom he identified in court. Jamieson, a lawyer who was acting for adjacent property owners, also said that he asked Mrs. Schultz at the party, "Can we get any more liquor?" and she said, "I think the waiter is getting more." There was testimony that during the course of the party Meyer and the defendant Ida Rosoff, the partner of Mrs. Schultz in the catering business, were about the premises.

On May 11th Mrs. Weller and Jamieson called at the premises for the purpose of providing for a second party of 14. They saw Mrs. Schultz and Meyer, and Jamieson

arranged with them for this party, which was held on May 16th. Liquor was furnished for that occasion, but neither Mrs. Weller nor Jamieson testified specifically that it was ordered from Mrs. Schultz. Two or three days after the contract was made for the May 16th party, the proposal to furnish liquor was made to Meyer, and he at first refused. He then arranged to have a bootlegger meet Jamieson at a club, but the latter was not there when the bootlegger arrived, and Meyer afterwards took the order from Jamieson, paid the bootlegger, and was reimbursed by Jamieson. There was drinking at this second party, and on that occasion the prohibition agents seized 5 quarts of gin and 2½ quarts of Scotch whisky.

There was considerable testimony adduced by complainant to the effect that the defendants kept a noisy place, that people came out of it intoxicated, and that people could be heard complaining of what bad liquor they were served there. One of the defendants' witnesses, Felstiner, also admitted that he had seen people drinking on the premises at a wedding which he attended.

M. Michael Edelstein, of New York City, for appellants.

Charles H. Tuttle, U. S. Atty., of New York City (Arthur H. Schwartz and Maxwell Shapiro, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). Two principal points are involved in this suit: (1) Whether section 23 of the National Prohibition Act (27 USCA §§ 35–37) is broad enough to authorize the court to enjoin the defendants from taking or accepting orders, or from selling intoxicating liquor, *anywhere* within the Southern District of New York; (2) whether, if such be the case, any proof has been offered showing an intention on the part of the defendants to continue violations of the Prohibition Act (27 USCA) at other places than 353 Riverside Drive.

[1] Section 23 provides:

"That any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person, company or corporation, keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure, any liquor, or

who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things.

"In such proceedings it shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law.

"For removing and selling property in enforcing this act the officer shall be entitled to charge and receive the same fee as the sheriff of the county would receive for levying upon and selling property under execution, and for closing the premises and keeping them closed a reasonable sum shall be allowed by the court.

"Any violation of this title upon any leased premises by the lessee or occupant thereof shall, at the option of the lessor, work a forfeiture of the lease." 27 USCA §§ 35–37.

Section 22 of the Prohibition Act provides, among other things, that, "on finding that the material allegations of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored in such room, house, building, boat, vehicle, structure, or place, or any part thereof." 27 USCA § 34.

By reason of this language of section 22 it is contended that proceedings affecting the use of property adjudged a nuisance, with the ancillary injunctive relief, are limited to acts in relation to the use of that property. Moreover, it is said to follow from this that section 23 can have no application to persons violating the act upon premises declared to be a nuisance, and that section 23 was only aimed at the itinerant purveyors of liquor.

It is true that under section 22 the injunction relates to the illegal use of property in cases where a nuisance is abated, and without more persons selling liquor could not be enjoined from selling liquor elsewhere. But it by no means follows that section 23 is limited to itinerant persons, and such an interpretation seems to be in contradiction of its language. It subjects to injunction "any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person, * * * keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure, any liquor, or who shall travel to solicit, or solicit, or take, or

accept orders for the sale, shipment, or delivery of liquor in violation of this title.
\* ⁎ \* "

If to "travel to solicit" indicates only an itinerant person, who never has a fixed place of business, what about the words "solicit" and "take or accept orders," which immediately follow? Why should an injunction "semper ubique" issue against so-called bootleggers, and against all others be limited to a particular place? And why should others, upon abandoning a place where the nuisance they have caused has been abated, be able promptly to move across the street and go right on violating the act, without the continuing restraint of the injunction? Proprietors of speak-easies, who open a new place as fast as the public authorities can close their old ones, have been familiar figures ever since the Prohibition Act went into effect, and would seem to come as clearly within the terms of section 23 as the traveling salesman whose liquor is on his person or in some warehouse whence he ships it to his customers.

We are referred to the decision of the Third Circuit in Capawana v. United States, 294 F. 153. There the Circuit Court of Appeals struck out a personal injunction granted under the general terms of section 23, where the premises owned by the person enjoined had been held to be a nuisance, and said in reference to that section: "Neither the allegations of the bill nor the proofs brought the present case within the terms of that section."

The opinion contains no discussion of the point involved, and merely states that section 23 did not apply to the facts of that case; so that it is impossible to determine with certainty the precise grounds of the decision. But if it goes so far as to hold that the incidence of section 23 is limited to persons having a business itinerant in the ordinary sense, we must, with all deference, decline to follow it. The decision in State v. Brush, 318 Ill. 307, 149 N. E. 262, construing the Illinois prohibition act (Laws 1921, p. 681), is to the effect that a similar provision of that act is not applicable to a case where a defendant maintains a nuisance at a fixed situs. But the Illinois court held that, because there had been an illegal search, the evidence on which the proceeding was founded was inadmissible. The case, therefore, rests on other grounds than the inapplicability of the act.

We think the language of section 23 covers the facts of the present case, and that the proof shows a course of conduct on the

27 F.(2d)—46

part of the defendants which the act has denominated a nuisance.

[2] In respect to proof of an intention to continue violations elsewhere than at the present premises, it would have been supplied by the terms of section 23 itself, if the suit had been "brought within sixty days following \* ⁎ ⁎ such violation of the law." Now this suit was not begun until July 23d, which is 68 days after the second party. But evidence can take the place of the presumption of the statute. Here was proof of taking and accepting the order from Mrs. Weller for the party of May 5th, and from Jamieson for the party of May 16th; the testimony of O'Connell of the additional sale to him on May 5th; Felstiner's testimony of drinking at a third party, which he attended; as well as the general proof that there were drunken people coming from the premises on various occasions, that customers were heard complaining of bad liquor they got there, and that the place was noisy and troublesome to the neighborhood. In other words, the defendants are shown to have been personally, or through their agents, engaged in conducting a business in which they frequently took orders for the sale of liquor in violation of the act. It is such a business, and not the premises No. 353 Riverside Drive, which section 23 denominates a nuisance. When men take orders for supper parties at which liquor is served, they may be enjoined, as it were, automatically from continuing to do this anywhere, if suit is brought within sixty days. The proof here supplies ample evidence of an intention to continue a business of the same character. It was, therefore, as justifiable to enjoin the defendants under section 23 from continuing the business in general as it was under section 22 to enjoin them from maintaining the nuisance at 353 Riverside Drive.

The case is different from an injunction to restrain a repeated trespass on Blackacre. The court would have no reason, on proof of such trespasses on Blackacre, to restrain the person committing them from trespassing at Whiteacre. But here we have defendants engaging in a business in which the frequent sale of liquor has played a part. There is no reason to suppose that the business will stop because it cannot be conducted at the old situs, while there is every reason to hold that there is danger of its continuance elsewhere. The power to enjoin defendants from continuing the illegal acts anywhere within the territorial jurisdiction of the court is granted by section 23.

We have already held, in the recent case

of .United States v. McCrory, 26 F.(2d) 189, that a waiter in a "speak-easy," taking orders to sell whisky, might be enjoined generally, and we can see no reason to change the view there expressed.

Decree affirmed.