## UNITED STATES v. LOCKHART.

District Court, D. Nebraska, Lincoln Division. June 19, 1929.

No. 292.

J. C. Kinsler, U. S. Dist. Atty., of Omaha, Neb., and Philip M. Aitken, Asst. U. S. Dist. Atty., of Lincoln, Neb.

J. R. Lones, of Omaha, Neb., for defendant.

MUNGER, District Judge. The questions presented in this case arise upon a motion of the defendant to dismiss the plaintiff's bill. The bill alleges, in substance, that the defendant within less than 60 days before the filing of the bill, at a residence building in Otoe county, Neb., unlawfully, and without authorization by a written permit from the Commissioner of Internal Revenue, accepted an order for the sale and delivery of intoxicating liquor, unlawfully carried the liquor around on his person, with intent to effect a sale of the liquor, and unlawfully sold the liquor. It is alleged that the liquor was fit for beverage purposes, and contained more than one-half of one per cent. of alcohol by volume. The prayer of the bill is for an injunction restraining the defendant from keeping or carrying around on his person or in a vehicle or other conveyance, or leaving in a place for another to secure, any intoxicating liquor, with intent to effect a sale thereof, and restraining the defendant from soliciting, taking, or accepting orders for the sale of such liquor.

Section 23 of title 2 of the National Prohibition Act (27 U. S. Code, § 35 [27 USCA § 35]), contains the following provisions:

"That any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person, company or corporation, keep or carry around on his person or in a vehicle, or other conveyance whatever, or leave in

a place for another to secure, any liquor, or who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things.

"In such proceedings it shall not be necessary to show any intention on the part of the accused to continue such violations if the action is brought within sixty days following any such violation of the law."

Somewhat in contrast with this section, sections 21 and 22 (27 USCA §§ 33, 34) immediately preceding declare that any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of title 2 is declared to be a common nuisance, make it a crime for any person to maintain such a nuisance, provide an action in equity may be brought in the name of the United States to enjoin the nuisance, that an injunction may issue against the manufacture, sale, barter, or storage of liquor in such places, and provide that the court may order the structure or place to be closed for one year.

The defendant claims that the plaintiff's bill is defective because it does not allege that the defendant intends to continue in unlawful acts such as the bill alleges that he has committed. It is true that many decisions have held that in a proceeding under sections 21 and 22 to enjoin the use of one of the places described in these sections, it should appear that the defendant had a purpose of continuing in violation of the National Prohibition Act. But the express provisions of section 23 make it unnecessary to show any intention of the defendant to continue in violations, when the suit is brought, as was done in this case, within 60 days following an alleged violation of the law, and if it is unnecessary to show such intention, it is unnecessary to allege it.

It is also urged that the bill should allege that the United States will suffer irreparable injury if the injunction is not granted. In the absence of a statute the plaintiff seeking an injunction should show that a refusal of an injunction would cause him an irreparable injury, but the power to enjoin acts declared to be a nuisance by sections 21, 22, and 23 of the National Prohibition Act in a suit brought by the United States is conferred by the terms of those sections and is not conditioned by proof of an injury to the United States. A similar contention was made in United States v. Trans-Missouri Freight Association, 166 U. S. 290, 342, 17 S. Ct. 540 (41 L. Ed. 1007), in a suit brought under the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15) for an injunction. The court said: "It is also argued that the United States have no standing in court to maintain this bill; that they have no pecuniary interest in the result of the litigation or in the question to be decided by the court. We think that the fourth section of the act invests the Government with full power and authority to bring such an action as this, and, if the facts be proved, an injunction should issue. Congress having the control of interstate commerce, has also the duty of protecting it, and it is entirely competent for that body to give the remedy by injunction, as more efficient than any other civil remedy. The subject is fully and ably discussed in the case of In re Debs, 158 U. S. 564 [15 S. Ct. 900, 39 L. Ed. 1092]. See, also, Cincinnati, New Orleans, etc., Railway v. Interstate Commerce Commission, 162 U. S. 184 [16 S. Ct. 700, 40 L. Ed. 935]; Texas & Pacific Railway v. Interstate Commerce Commission, 162 U. S. 197 [16 L. Ed. 666, 40 L. Ed. 940]."

In Re Debs, Petitioner, 158 U. S. 564, 584, 15 S. Ct. 900, 906 (39 L. Ed. 1092) the following language was used: "Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter."

Does section 23 of the National Prohibition Act apply only to those who travel about to sell liquor? The statute makes a distinction between one who keeps liquor on his person and one who carries liquor around on his person. It applies as well to the intending seller who keeps liquor on his person, at a fixed place of business, as to the seller who moves about. The statute makes a similar and plain distinction between one who travels to solicit and one who merely solicits orders for liquor. Considering this contrast of persons, the words "or solicit, or take, or accept orders" plainly include acts done regardless of itinerancy. If a reasonable doubt existed as to the meaning of the section, the construction adopted should prevail, as section 3 of the act (27 USCA § 3) declares that "all the provisions of this Act shall be liberally construed to the end that

the use of intoxicating liquor as a beverage may be prevented."

The same question was presented in United States v. Rosoff (C. C. A.) 27 F. (2d) 719, 720, and the court said:

"But it by no means follows that section 23 is limited to itinerant persons, and such an interpretation seems to be in contradiction of its language. It subjects to injunction 'any person who shall, with intent to effect a sale of liquor, by himself, his employee, servant, or agent, for himself or any person * * * keep or carry around on his person, or in a vehicle, or other conveyance whatever, or leave in a place for another to secure, any liquor, or who shall travel to solicit, or solicit, or take, or accept orders for the sale, shipment, or delivery of liquor in violation of this title. * * *'

"If to 'travel to solicit' indicates only an itinerant person, who never has a fixed place of business, what about the words 'solicit' and 'take or accept orders,' which immediately follow? Why should an injunction 'semper ubique' issue against so-called bootleggers, and against all others be limited to a particular place? And why should others, upon abandoning a place where the nuisance they have caused has been abated, be able promptly to move across the street and go right on violating the act, without the continuing restraint of the injunction? Proprietors of speak-easies, who open a new place as fast as the public authorities can close their old ones, have been familiar figures ever since the Prohibition Act went into effect, and would seem to come as clearly within the terms of section 23 as the traveling salesman whose liquor is on his person or in some warehouse whence he ships it to his customers.

"We are referred to the decision of the Third Circuit in Capawana v. United States, 294 F. 153. There the Circuit Court of Appeals struck out a personal injunction granted under the general terms of section 23, where the premises owned by the person enjoined had been held to be a nuisance, and said in reference to that section: 'Neither the allegations of the bill nor the proofs brought the present case within the terms of that section.'

"The opinion contains no discussion of the point involved, and merely states that section 23 did not apply to the facts of that case; so that it is impossible to determine with certainty the precise grounds of the decision. But if it goes so far as to hold that the incidence of section 23 is limited to persons having a business itinerant in the ordinary sense, we must, with all deference, decline to follow it. The decision in State v. Brush, 318 Ill. 307, 149 N. E. 262, construing the Illinois prohibition act (Laws 1921, p. 681), is to the effect that a similar provision of that act is not applicable to a case where a defendant maintains a nuisance at a fixed situs. But the Illinois court held that, because there had been an illegal search, the evidence on which the proceeding was founded was inadmissible. The case, therefore, rests on other grounds than the inapplicability of the act.

"We think the language of section 23 covers the facts of the present case, and that the proof shows a course of conduct on the part of defendants which the act has denominated a nuisance."

In United States v. McCrory (C. C. A.) 26 F.(2d) 189, 191, an injunction against a waiter, who had taken orders for liquor in a "speak easy," was sustained under the terms of section 23, although it was held that no injunction could issue under the terms of section 22, for lack of proof of ownership of the premises. The court said:

"But the injunction against Reynolds stands in a different position. Section 23 of title 2 of the Prohibition Act [27 USCA § 35] provides that any person who shall 'take or accept orders for the sale * * * or delivery of liquor in violation of this title is guilty of a nuisance and may be restrained by injunction, temporary and permanent, from doing or continuing to do any of said acts or things.'

"To be sure Reynolds denied making sales or seeing any sales of liquor made on the premises, but he admitted that he was a waiter there for about a year, and it was abundantly proved that liquor was sold and that a quantity was seized at the place on at least two occasions while he was employed. There was a bar in the rear of the premises, and at the time of the arrest of Murphy on March 5, 1927, 'there were about 12 people up against the bar,' and rye, Scotch, and champagne were found in the place. It is unreasonable to suppose that a waiter in a 'speak-easy' did not 'take orders' for liquor. To take such orders was in the natural course of his business. We accordingly hold that the circumstances require a finding that he acted in accordance with reasonable probability, and that a case for a personal injunction against him was made out. * * *

"The part of the decree holding the premises a nuisance and ordering them

closed is reversed, for lack of jurisdiction over the owner, lessee, tenant, or occupant, who was never served with process or appeared in the suit, and the portion granting a personal injunction against Reynolds is affirmed."

It may be that the allegation that the defendant sold intoxicating liquor is not necessarily a charge that he took or accepted an order for its sale. Usually a sale of an article of personal property is effected by the delivery by the seller to the purchaser of the article in pursuance of an order, expressed or implied, of the purchaser. See United States v. Rosoff, supra, and United States v. McCrory, supra. There may be instances where the purchaser, already having come into possession of the article, effects his purchase by mere payment of the price, and the seller does not take or accept any order for the sale or delivery. But the bill in this case also charges that the defendant accepted an order for the sale and delivery, and that the defendant carried the liquor around on his person with intent to effect a sale of it, acts which are included within the terms of section 23.

█ The defendant contends that the plaintiff's bill charges a crime against him, and that a trial in this suit would be a violation of the provisions of the United States Constitution granting the right of trial by jury for all crimes (article 3, section 2, and Amendment 6), and that a decree against him, if followed by punishment for contempt in case of his violation of the terms of the decree, would be contrary to the due process clause of the Fifth Amendment. Some of these objections may be premature. What is the nature of the present suit? Some of the acts alleged may show that there was an illegal sale, but for reasons heretofore stated, these allegations may be disregarded, as not sufficient of themselves to sustain the bill. The taking and accepting orders for the sale and delivery of liquor, and the carrying around upon the defendant's person of liquor, are acts that may come within the definition of crimes by sections 6 and 19 of title 2 of the National Prohibition Act (27 USCA §§ 16, 31); but the charges are not now presented by indictment or information, but by a bill in equity, with a prayer for equitable relief by injunction. It is a misconception to say that this presents a case for the trial of a crime. The same objections were presented in Murphy v. United States, 272 U. S. 630, 631, 47 S. Ct. 218 (71 L. Ed. 446), to the right to proceed in equity under section 22 of the National Prohibition Act to enjoin the use of a place for the sale of intoxicating liquor, a use which was a crime by the terms of section 21 of the act, and a crime for which the defendant had been tried and acquitted. The court said:

"The appellants say that an additional penalty is imposed by Sec. 22, and that after they have been acquitted of the crime they cannot be punished for it in a second proceeding. Coffey v. United States, 116 U. S. 430 [6 S. Ct. 432, 29 L. Ed. 681]. But although the contention is plausible it seems to us unsound. It is true, especially if the premises are closed for a year, that a pecuniary detriment is inflicted, but that is true of a tax, and sometimes it is hard to say how a given detriment imposed by the law shall be regarded. Hodge v. Muscatine County, 196 U. S. 276, 279, 280 [25 S. Ct. 237 (49 L. Ed. 477)]; St. Louis Compress Co. v. Arkansas, 260 U. S. 346, 348 [43 S. Ct. 125 (67 L. Ed. 297)]; [Smith v.] The Creole [Fed. Cas. No. 13033] 2 Wall. Jr. 485. The mere fact that it is imposed in consequence of a crime is not conclusive. A government may endeavor to prevent certain facts and yet provide that if they happen they shall yield as much revenue as they might have yielded if lawful. United States v. One Ford Coupé Automobile, ante [272 U. S.] page 321 [47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025]. In like manner it may provide for the abatement of a nuisance whether or not the owners of it have been guilty of a crime. The only question is what the twenty-second section is intended to accomplish. It appears to us that the purpose is prevention, not a second punishment that could not be inflicted after acquittal from the first. This seems to us to be shown by the whole scope of the section as well as by the unreasonableness of interpreting it as intended to accomplish a plainly unconstitutional result. The imperative words go only to the immediate stopping of what is clearly a nuisance. The permissive words allow closing for a year (a not unreasonable time to secure a stoppage of the unlawful use, United States v. Boynton [D. C.] 297 F. 261, 267) and show the purpose of that by providing the alternative of a bond conditioned against such uses.

"If we are right as to the purpose of Sec. 22, the decree in the present case did not impose a punishment for the crime from which the appellants were acquitted by the former judgment. That it did impose a punishment is the only ground on which the former judgment would be a bar. For although the par-

ties to the two cases are the same, the judgment in the criminal case does not make the issues in the present case one res judicata, as is sufficiently explained in Stone v. United States, 167 U. S. 178 [17 S. Ct. 778, 42 L. Ed. 127], and Chantangco v. Abaroa, 218 U. S. 476 [31 S. Ct. 34, 54 L. Ed. 1116]. The Government may have failed to prove the appellants guilty and yet may have been and may be able to prove that a nuisance exists in the place. Our answer to the question certified agrees with the conclusion of the Supreme Court of Kansas in a carefully considered case, State v. Roach, 83 Kan. 606 [112 P. 150, 31 L. R. A. (N. S.) 670, 21 Ann. Cas. 1182]."

In Grosfield v. United States, 276 U. S. 494, 497, 48 S. Ct. 329 (72 L. Ed. 670, 59 A. L. R. 620), the question again came before the Supreme Court in a case where the defendants had been enjoined under section 22, and the court again announced that the provision of the statute authorizing an injunction was not punitive, but preventive.

In Duignan v. United States, 274 U. S. 195, 197, 47 S. Ct. 566, 567 (71 L. Ed. 996), a suit to abate a liquor nuisance under section 22, the court said: "So far as appellant's motion for a jury trial was directed to the issues raised by the bill and answer, it was properly denied, as Sec. 22 of the National Prohibition Act authorizes the abatement of a liquor nuisance by a bill in equity filed by the United States. Cf. Murphy v. United States, 272 U. S. 630 [47 S. Ct. 218, 71 L. Ed. 446]."

See, also, Engler v. United States (C. C. A.) 25 F.(2d) 37, 39; Egner v. United States (C. C. A.) 16 F.(2d) 597; Kling v. United States (C. C. A.) 8 F.(2d) 730, 731; Wedel v. United States (C. C. A.) 2 F.(2d) 462, 463; United States v. Schwartz (D. C.) 1 F.(2d) 718, 722; United States v. American Brewing Co. (D. C.) 1 F.(2d) 1001, 1003; Denapolis v. United States (C. C. A.) 3 F.(2d) 722, 723; United States v. Duignan (C. C. A.) 4 F.(2d) 983, 984; Lewinsohn v. United States (C. C. A.) 278 F. 421, 427.

■ Is section 23, as thus interpreted, a valid exercise of power by Congress? It is urged that the acts that may thus be enjoined are ordinary crimes and do not have the element of injury to property rights which has been the basis for the award of injunctions against public nuisances both at common law and under many statutes, and that it is an arbitrary exercise of power to enjoin the commission of a crime such as the acceptance of an order for the unlawful sale of intoxicating liquor. It is true that in many cases such as Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205, the analogy of the legislative remedy by injunction to the ancient mode of abatement of public nuisances has been mentioned in support of the view that due process of law was not denied by such legislation. In the Mugler Case the court refers to public nuisances and says: "This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury. District Attorney v. Lynn & Boston Railroad Co., 16 Gray [Mass.] 242, 245; Attorney General v. New Jersey Railroad, 2 Green. Ch. [3 N. J. Eq.] 139; Attorney General v. Tudor Ice Co., 104 Mass. 239, 244 [6 Am. Rep. 227]; State v. Mayor, 5 Port. (Ala.) 279, 294 [30 Am. Dec. 564]; Hoole v. Attorney General, 22 Ala. 190, 194; Attorney General v. Hunter, 1 Dev. Eq. [16 N. C.] 12; Attorney General v. Great Northern Railway Co., 1 Drew. & Sm. 154, 161; Eden on Injunctions, 259; Kerr on Injunctions (2d Ed.) 168."

Congress has declared the acts mentioned in section 23 of the National Prohibition Act to be nuisances, and there has been general recognition of the fact that the traffic in intoxicating liquor affects the health, morals, and safety of the community. In the Mugler Case (page 662 [8 S. Ct. 297]) the court said: "for we cannot shut out of view the fact, within the knowledge of all, that the public health, the public morals, and the public safety, may be endangered by the general use of intoxicating drinks; nor the fact, established by statistics accessible to every one, that the idleness, disorder, pauperism, and crime existing in the country are, in some degree at least, traceable to this evil." See, also, Boston Beer Co. v. Massachusetts, 97 U. S. 25, 33 (24 L. Ed. 989); Jacob Ruppert, Inc., v. Caffey, 251 U. S. 264, 282, 40 S. Ct. 141 (64 L. Ed. 260).

The section in question may be sustained as a proper legislative extension of the doctrine of public nuisance. But if the violation of the Constitution of the United States and of the National Prohibition Act, and the probable injury to the health, morals, and safety of the community if such violations are continued, are not sufficient to manifest a public nuisance, by what standard shall it be decided that this exertion of power by Congress is not a reasonable one? The only portions of the Constitution that are

claimed to be violated are those providing for a jury trial in criminal cases, against double jeopardy for the same crime, and against deprivation of liberty or property without due process of law—contentions that we have seen are untenable, because the proceedings are preventive and not punitive.

The Eighteenth Amendment conferred on Congress the power to enforce the amendment by appropriate legislation. In Eilenbecker v. District Court of Plymouth County, 134 U. S. 31, 40, 10 S. Ct. 424, 427 (33 L. Ed. 801), the court said of legislation enacted by the state of Iowa to enforce a statutory prohibition of the liquor traffic: ''If the objection to the statute is that it authorizes a proceeding in the nature of a suit in equity to suppress the manufacture and sale of intoxicating liquors which are by law prohibited, and to abate the nuisance which the statute declares such acts to be, wherever carried on, we respond that, so far as at present advised, it appears to us that all the powers of a court, whether at common law or in chancery, may be called into operation by a legislative body for the purpose of suppressing this objectionable traffic; and we know of no hindrance in the Constitution of the United States to the form of proceedings, or to the court in which this remedy shall be had. Certainly it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil, as to punish the offense as a crime after it has been committed.''

And in Selzman v. United States, 268 U. S. 466, 468, 45 S. Ct. 574, 575 (69 L. Ed. 1054) the court said: ''The power of the Federal Government, granted by the Eighteenth Amendment, to enforce the prohibition of the manufacture, sale and transportation of intoxicating liquor carries with it power to enact any legislative measures reasonably adapted to promote the purpose.''

If Congress may declare acts of the nature defined in sections 21 and 23 of the National Prohibition Act to be nuisances, punishable by fine and imprisonment [United States v. Reisenweber (C. C. A.) 288 F. 520, 524; United States v. American Brewing Co. (D. C.) 1 F.(2d) 1001, 1003], why is it not appropriate legislation to grant the lesser power of enjoining a repetition of such acts? The legislation is similar in principle to the Sherman Anti-Trust Act of July 2, 1890 (26 Stat. 209, §§ 1–4, 15

U. S. Code, §§ 1–4 [15 USCA §§ 1–4]), which made it a criminal offense to make a contract or engage in a combination or conspiracy in restraint of trade or commerce between the several states or with foreign nations, or to attempt to monopolize such trade or commerce, and provided a punishment for a violation, and also granted power to the United States courts to prevent and restrain violation of the act.

In the Wilson Tariff Act of August 27, 1894, Congress created a number of crimes (section 73, 28 Stat. 570, 15 U. S. Code, § 8 [15 USCA § 8]) out of acts or conspiracies by importers of goods, and by section 74 (28 Stats. 570, 15 U. S. Code, § 9 [15 USCA § 9]) authorized suits by the United States to restrain the commission of the acts which had been declared crimes by the preceding section. In section 14 of the Clayton Act, October 15, 1914 (38 Stats. 736, 15 U. S. Code, § 24 [15 USCA § 24]), Congress declared certain acts in violation of the anti-trust laws to be crimes, and by section 15 (38 Stats. 736, 15 U. S. Code, § 25 [15 USCA § 25]) authorized suits by the United States to restrain such violations. In a case arising under the Sherman Anti-Trust Act, Keogh v. Chicago & N. W. Ry. Co., 260 U. S. 156, 161, 43 S. Ct. 47, 49 (67 L. Ed. 183), the court said: ''But under the Anti-Trust Act, a combination of carriers to fix reasonable and non-discriminatory rates may be illegal; and if so, the Government may have redress by criminal proceedings under Sec. 3 [15 USCA § 3], by injunction under Sec. 4, and by forfeiture under Sec. 6. That was settled by United States v. Trans-Missouri Freight Association, 166 U. S. 290 [17 S. Ct. 540, 41 L. Ed. 1007], and United States v. Joint Traffic Association, 171 U. S. 505 [19 S. Ct. 25, 43 L. Ed. 259].''

The control of Congress over the prohibition of the manufacture, sale, and transportation of intoxicating liquor under the Eighteenth Amendment is as comprehensive as its control over interstate commerce under section 8 of article 1 of the original Constitution.

That the provisions of section 23 are appropriate legislation to enforce the Eighteenth Amendment may be inferred also from the fact that a number of states have adopted legislation which is substantially the same, thus expressing a view widely held of the necessity or at least of the reasonableness of enjoining acts of this nature. Comp. Code of Iowa 1919, § 1019;

2 Page's Ann. Ohio Gen. Code 1926, §§ 13195–2, 13195–3; Hillyer's Consol. Supp. to Code (California) (1921–1925) pp. 2933, 2934, §§ 23, 24; 3 Callaghan's Illinois Stats. Ann. p. 3132, §§ 25, 26, ch. 43; Revised Codes Mont. 1921, §§ 11068, 11069; 2 South Dakota Rev. Code 1919, §§ 10294, 10295; Laws of New Mexico 1927, c. 89, p. 272, §§ 9 and 10; Comp. Laws Supp. North Dakota 1925, §§ 10136a1, 10136a2; Alabama Code of 1928, § 4653; Georgia Penal Code of 1926, § 448 (28); Criminal Code South Carolina 1922, §§ 844, 845, 846. These legislative acts purport to allow injunctions against the commission of offenses under the laws of the states relating to intoxicating liquors, and the offenses that may be enjoined are not the keeping of places where violations of law occur, but embrace the continuance of such acts as illegal sales and possession and attempts to sell, possess, or transport, wherever they may occur. It is for Congress to select the means for enforcement of the Eighteenth Amendment to the Constitution, and if legislation enacted does not violate any other portion of the Constitution, the courts may not strike down a statute because in their judgment it is not appropriate legislation. Ex parte Virginia, 100 U. S. 339, 345 [25 L. Ed. 676]; Hamilton v. Kentucky Distilleries Co., 251 U. S. 146, 161, 40 S. Ct. 106 (64 L. Ed. 194).

For the reasons stated, it must be held that section 23 of the National Prohibition Act is a valid enactment, and that a cause of action is stated in the plaintiff's bill, and the motion to dismiss will be overruled.