## UNITED STATES v. AMERICAN BREWING CO. et al.

(District Court, E. D. Pennsylvania. October 21, 1924.)

No. 2791.

**1. Trial ⬤=11(3)—Suit to enjoin nuisance not transferable to law side of court.**

A suit to enjoin a nuisance, brought under National Prohibition Act, tit. 2, § 22 (Comp. St. Ann. Supp. 1923, § 10138½k), is not transferable to the law side of the court.

**2. Courts ⬤=258—Jurisdiction may be enlarged by legislation.**

Congress may, acting within its constitutional powers, confer on courts of law, equity, or admiralty jurisdiction over matters not theretofore within their jurisdiction.

**3. Nuisance ⬤=60—May be defined by legislation.**

It is not beyond the constitutional power of Congress to declare to be nuisances what before were not.

**4. Intoxicating liquors ⬤=21 — Provision of Prohibition Act defining and requiring abatement of nuisances held constitutional.**

National Prohibition Act, tit. 2, §§ 21, 22 (Comp. St. Ann. Supp. 1923, §§ 10138½jj, 10138½k), defining what shall constitute a nuisance, and conferring on courts of equity power to determine the facts and to abate such nuisances, *held* constitutional.

**5. Equity ⬤=362—Defects in structure of bill held not ground for dismissal.**

Defects in the structure of a bill *held* not to require its dismissal.

In Equity. Suit by the United States against the American Brewing Company and others. Motion to transfer to law side of the court, under equity rule 22, denied. Motion to dismiss bill denied.

George W. Coles, U. S. Dist. Atty., and L. Le Roy Deininger, Asst. Dist. Atty., both of Philadelphia, Pa.

Ladner & Ladner and Albert H. Ladner, all of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. [1] We are unable to find any place for the first motion. Congress has directed that a case of this kind "shall be brought and tried as one" in equity. It has not directed that what is commonly called an action at law may be brought. The proceeding, whatever it may be, is wholly of statutory origin. The proposition advanced by the defendant is that it is beyond the power of Congress to direct or even to authorize the courts of equity to entertain such a case. Whether a court of equity can or cannot "try" the case, no duty has been imposed upon the courts of law, nor are we able to see how they could function in any helpful way, except perhaps as ancillary to a court of equity. The motion to transfer is in consequence denied.

The equity rules provide that demurrer questions, which go to the cause of action, may be raised by "a motion to dismiss or answer." Such an answer has been filed in this cause. The questions raised may, however, be disposed of in limine, and where, as here, they go to the whole cause of action, it is well to so dispose of them. In

consequence the present motion has been made.

The argument in support of the motion to dismiss, which has been pressed with marked ability, may be condensed into the following propositions:

(1) Congress does not, by denominating an act a nuisance, incorporate it in the class of acts which, as nuisances, are dealt with by courts of equity.

(2) It is beyond the power of Congress (as phrased in the brief of counsel) to "confer upon courts of equity jurisdiction which they did not before have."

(3) Courts of equity have never exercised the judicial power to determine what acts are offenses against the criminal law, nor to enjoin the committing of such acts, nor can Congress enlarge equity jurisdiction so as to include such acts.

(4) This limitation upon the power of Congress is because trial by jury is a constitutional right, and because article 3 grants the judicial power to the courts, and extends it to all cases at law and in equity and of admiralty and maritime jurisdiction, and puts it beyond the control of the legislative department of government.

(5) The bill is deficient in necessary averments and defective in its structure.

The general topic of discussion here suggested is one which at present is being made the subject of wide comment. A misconception often arises out of the use of the word "unconstitutional." This word, like many of our words, is used in two different senses. One, which may be called the English sense, is that the legislation conflicts with some recognized general principle. This is no more than to say that it is unwise, or is based upon a wrong or unsound principle, or conflicts with a generally accepted policy. The other, which may be called the American sense, is that the legislation conflicts with some provision of our written Constitution, which it is beyond the power of the Legislature to change. This distinction is too often lost sight of.

The real question here is not whether section 22, tit. 2, of this act of Congress (Comp. St. Ann. Supp. 1923, § 10138½k) conflicts with wise and sound principles of legislation, but whether it conflicts with any provision of our Constitution. If there is an express provision in the Constitution which forbids something to be done, it is clear that Congress cannot do the forbidden thing. There is danger, however, in carrying the doctrine of implied prohibitions too far. One of the propositions advanced is that, at the time of the adoption of the Constitution, there was in existence a system of law and a system of equity, each with its own peculiar field of operation, and that by the Constitution the judicial power was extended to both, and that there is in this an implied denial of the power of Congress to interfere with the limits of either.

The Supreme Court was established by the Constitution, and power given to Congress to constitute other courts, to which courts the judicial power was committed. The courts thus brought into being were organized into courts of criminal jurisdiction, law courts and courts of equity and of admiralty. The principle of the division of labor is as valuable applied to the work of the courts as to other human activities; but it is likewise true that no system of the administration of legal justice is a good one, unless it has the capacity for growth and development. Each of the several courts, as thus constituted, has its own field of operation and its system of practice. When separately constituted of different judges, each guards its jurisdiction with jealous care, and is quick to repulse the encroachments of the other. Thus, history discloses contest and struggle between the law courts and courts of equity, and between the law and admiralty courts. When, however, the same judges sit sometimes as constituting the one court and sometimes another, the distinctions among them are apt to become obscured, unless care is taken to keep them clear. The operation of the causes indicated has changed the very nature of the distinguishing functions of some of the courts in our system and of our concept and definition of what they are.

Equity, for illustration, while retaining exclusive possession of some part of the field it once occupied, has come to be defined as very little more than a different system of practice from that followed in the law courts. This is because it has encroached upon what was once the peculiar field of the law courts, and has submitted to like encroachments by the law courts upon what was once its own field. The wish to get results has been the prime motive in the breaking down of these distinctions, and Legislatures, by statutory enactments, and the courts themselves, by the adoption of rules, have contributed to it. This general drift has been markedly noticeable in some of the states, and for historical reasons in Pennsylvania. Conservatively minded judges and lawyers have sought to preserve the old landmarks, by having changes follow

the line of established principles, and seek to keep the new methods in accord with the old principles of practice and procedure, by making them the fruit of a development and growth rather than the product of a radical and arbitrary change. There are many illustrations of such extensions in practice and essentially in jurisdiction. The National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) provides us with another. Primarily it deals with a subject which has been incorporated into the criminal law. In the effort, however, to suppress the prohibited traffic in intoxicating liquors, it has commanded the aid of courts of equity by pronouncing the places from which the traffic is conducted to be nuisances, and calling upon the courts of equity to abate them and to enjoin those charged with violations of the law against a continuance of such violations.

[2] Without doubt this brings into the cognizance of courts of equity subjects of which without the act of Congress they would not have taken jurisdiction. Does the Constitution forbid Congress to make this innovation? The courts have, as we have seen, introduced like innovations in practice and in the subjects over which they take jurisdiction. No one, for instance, would doubt the power of a court of equity to pronounce that to be a nuisance and to abate it, which a number of years before no one would have thought of bringing before the court. Courts of admiralty have done the like. It was an accepted principle, both with the courts of law and of admiralty, that the ebb and flow of the tide marked the limits of maritime jurisdiction. Since the Genesee Case, however, this jurisdiction has expanded to include the navigation of the Great Lakes. If the Constitution forbids Congress to do what the courts have thus themselves done by introducing innovations into the practice and procedure of the courts, and what is in effect an expansion of their jurisdiction, then one of two conclusions follows. Either there can be no innovations, or we can have them only by the grace of the courts, and their will in this respect is our government.

[3, 4] Legislatures, national and state, have exercised the power without thought of question in almost numberless instances. Trades and occupations have been declared nuisances when conducted at certain times, or in certain localities, or under certain conditions, and courts of equity have held them, because of these enactments, to be nuisances per se, and have exercised the power of abatement without inquiry into the question of whether, in the absence of the enactments, the courts would have found them to be nuisances in fact or not. The accepted doctrine has been that, the Legislature having declared them to be nuisances, courts of equity have taken control of them as such.

The defendants rely largely for the contrary doctrine upon the case of U. S. v. Lot 29 (D. C.) 296 Fed. 729. We need not stop to discuss this case, because the case before us raises the very question upon which Judge Woodrough refused to pass.

It is however further urged upon us that the provisions of Amendments 5, 6, and 7 deny to Congress the power exercised in section 22 of the act before us. The thought is that these amendments give to all our citizens the constitutional right expressed in the phrase, used in some of the state Constitutions, "that the right of trial by jury shall remain as heretofore." This right has no place in the practice of courts of equity, and if jurisdiction to try a case which such courts could not "theretofore" have tried can be conferred upon them, the constitutional right is abridged. The inference drawn is that what was not "theretofore" within the judicial power of the court as defined by its established practice to do cannot be committed to its keeping by an act of Congress because such an act is unconstitutional.

A number of cases have been cited to us in support of this proposition. A typical one is North Pennsylvania Coal Co. v. Snowden, 42 Pa. 488, 82 Am. Dec. 530. There a bill in equity was dismissed on the ground that an act of assembly, which in effect gave a court of equity power to try an ejectment case, was unconstitutional. It is not a little curious that in the same book of reports, at page 89, in the case of Byers v. Commonwealth, an act of assembly, which denied the right to a jury trial in a criminal case, was held to be constitutional. These seemingly different, if not discordant, rulings indicate that the question is one of some difficulty. The rulings were that a landowner could not be deprived of his land without a jury trial, but that a vagrant could be thus deprived of his liberty. The key is to be found in the historical fact findings made by the court. A landowner had "theretofore" enjoyed the right to a jury trial; vagrants had not.

There are two propositions which must be accepted. One is that the right to a jury trial is a right which, when it exists as a constitutional right, is one of which no one

can be deprived by the Legislature. The other is that it does not exist in every case. The question then is to determine when it exists. The simple truth would seem to be that the mode of the trial, whether by jury or otherwise, is a mere incident of the practice of the courts. It exists, generally speaking, in what are called "cases at common law." It does not exist (as a right) in cases in equity, nor in maritime cases, nor always in bankruptcy cases. R. S. §§ 566 and 648 (Comp. St. §§ 1583, 1584), and the Act of February 16, 1875 (Comp. St. §§ 1585, 1586), expresses the doctrine as it is generally understood to be.

In a strict and narrow logical view it may be true, but it is too late to say it, that our affidavit of defense laws and laws authorizing the entry of summary judgments are unconstitutional (as indeed it was once contended that they were), because their practical effect is to have a fact finding made against a defendant, which before the practice was changed could only have been found by a jury. Changes, whether brought about by judicial rulings or statutory enactments, which extend the jurisdiction of other than common law courts, call for the like comment as do laws constituting courts before unknown. Courts may find to be nuisances what they have never before held to be such, and Legislatures may declare to be nuisances what before were not, and it is difficult to grasp the thought that the Constitution permits the one, but forbids the other. From time immemorial courts of equity have taken cognizance of cases of nuisance as such, whether found to be nuisances in fact or nuisances per se, because so pronounced to be by statute.

The argument addressed to us would not seem to touch legislation which expressly preserved the right to a jury trial. A constitutional right is saved, whether expressed in a legislative act or not. The argument, if it sustained such a right, in the present instance, would not go to a dismissal of the bill.

[5] There remains the criticism of the structure of the bill. We have already exceeded the limits of an opinion, and have only room for two comments. One is that the objections to the framework of this bill do not call for its dismissal. The other is that the bill is not free from justified criticism. The act of Congress authorizes the filing of a bill in equity. It is, however, to be brought and tried as a proceeding in equity. Rule 25 prescribes the structure of the bill. This restricts the statements of the bill to averments of the ultimate facts and excludes statements of the evidentiary facts. We can readily understand that section 25 and some parts even of section 22, with other provisions of the act, offer a temptation to a draftsman to incorporate search warrant averments and justifying affidavits, and ultra caution may cause him to hesitate over not incorporating them in his bill. They have no place, however, in equity pleading, although doubtless mere surplusage. Preliminary injunctions and restraining orders, as well as final decrees, must have supporting proofs, and affidavits have their proper place in equity practice. They have, however, no place in a bill.

The motion to dismiss is denied.