## No. 33,645

R. L. TRIMBLE, *Appellant*, v. THE CITY OF TOPEKA et al., *Appellees*.

(75 P. 2d 241)

Opinion filed January 29, 1938.

*Henry Dangerfield,* of Topeka, for the appellant.

*Ralph W. Oman* and *W. A. Dumars,* both of Topeka, for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff, for himself and others similarly situated, brought this action to enjoin enforcement of an ordinance of the city of Topeka regulating the business of barbering, alleging the ordinance was contrary to the laws of Kansas and unconstitutional and void under the constitutions of the state of Kansas and the United States of America in that it deprived him of his property without due process of law and denied him the equal protection of the law. A demurrer to his petition having been sustained, he appeals to this court.

The ordinance under attack may be summarized as follows: Section 1 provides for a barber sanitary and examining board of three members, consisting of the chairman of the board of health (presumably of the city but not so stated), as ex officio chairman, one master barber owning or operating a barber shop in the city of Topeka, and one journeyman barber. Section 2 makes it the duty of the board to examine an applicant desiring to engage in the business of barbering, as to his knowledge, skill and ability, and if satisfied of competency and ability, to issue a license. Under section 3 no examination shall be given to any person unless he presents a certificate of a regularly practicing physician of Topeka that he is free from any infectious, contagious, or communicable disease. Section 4 makes the journeyman member of the board the barber sanitary inspector and makes it his duty to inspect all barber shops not less than once in every thirty days, or oftener if in his judgment the public health and the proper enforcement of the ordinance require. Section 5 directs the board to make rules, regulations and requirements, which shall be printed, and each barber and barber shop provided with a copy. Section 6 sets the time for examinations. Section 7 provides for issuance of licenses and for deposit of funds with the city treasurer. Section 8 fixes an annual license fee of $5 for each chair and $2.50 for each barber, and provides that no barber may be employed who does not have the physician's certificate and the license provided in section 3. Section 9 provides no barber afflicted or who shall become afflicted with any infectious, contagious or communicable disease shall be permitted to work in any barber shop and his license shall be revoked. Section 10 makes it unlawful for any operator of a barber shop to have in his employ any person afflicted with the above-named diseases, to permit his shop to be-

come insanitary or to violate any of the terms of the ordinance or the rules and regulations of the board. Section 11 provides for cancellation by the inspector of the licenses granted, and for petition to the board for a hearing and final order. Section 12 fixes penalty for violation at $25 and costs. Section 13 authorizes the board to fix the salary of the inspector and the per diem of the members of the board to be paid the members for attendance at the regular examining meetings. Section 14 declares the ordinance is passed for proper regulation of barbers and barber shops in the interest of public health. Section 15 states the ordinance is not applicable to beauty parlors. Section 16 provides that if any section, paragraph, sentence or clause shall be held void or invalid it shall not affect the remainder. Section 17 repeals conflicting ordinances and section 18 fixes the effective date.

The appellant presents two questions: Does the city have power to compel one holding a state barber's license to take the examination and qualify under the terms of the ordinance before he can follow the occupation of barbering in Topeka? and (2) Is the tax imposed by the ordinance an occupation tax?

The answer to the first question requires an examination of pertinent state legislation. In 1903 an act was passed regulating the practice of barbering (Laws 1903, ch. 70). Its various sections have been amended from time to time, and as amended it now appears as G. S. 1935, 74-1801 to 74-1804, dealing with the state barber board, and G. S. 1935, 65-1801 to 65-1807, dealing with the examination and registration of barbers. In G. S. 1935, 74-1801, appears the following:

"Said board shall, with the approval of the state board of health, prescribe such sanitary rules as it may deem necessary to prevent spreading of infectious or contagious diseases."

Similar language was contained in Laws 1903, chapter 70, section 2. In 1909 an act (ch. 224) was passed, which now appears as G. S. 1935, 65-172, 65-173. It declares that in the interest of the public health and to prevent the spread of contagious and infectious diseases, the state board of health is charged with the sanitary supervision of barber shops, is empowered to inspect them and to make rules and regulations necessary to safeguard the public health, and that any person violating them shall be guilty of a misdemeanor, and fined. G. S. 1935, 65-1801 *et seq.*, make it unlawful for any person to follow the occupation of barber until he has procured a

certificate of registration as required by the act, provide for examinations by the state barber board; for the issuance to barbers of certificates expiring December 31 of each year at a cost of $2, and for yearly renewal at the same cost; for examination of persons desiring to follow the occupation of barber, who must satisfy the board they are of good moral character, free from contagious or infectious disease, and are otherwise qualified. Provision is also made for issuance of the above certificates and for their display, and that they may be revoked for habitual drunkenness, gross incompetency, failure or refusal to guard against contagious or infectious diseases or the spreading thereof, for violation of the rules of the board, or for extortion or overcharge practiced, and providing for notice and hearing before revocation, for reissue of any revoked certificate, and for closing of any establishment pending a hearing as provided. It is made unlawful to violate any provision of the act.

Appellant's contention is that the state has legislated fully with respect to the occupation of barbering and to the exclusion of any city; that the state law requires one before engaging in that occupation to procure his certificate of registration from the state barber board, and that when it is procured he is authorized to follow his occupation any place within the state. He contends further that the city ordinance is repugnant to and inconsistent with the state law in that it permits one to follow the occupation of barbering by obtaining a city license, even though he has no certificate from the state, and prohibits a certificate holder under the state law from exercising a right granted to him.

. The city contends that the above statutes do not reserve to the state the exclusive right to regulate; that the city, by reason of G. S. 1935, 13-436, giving it power to make regulations to secure the general health, has concurrent jurisdiction and that it had authority to enact the ordinance and enforce it.

Before entering upon a discussion of the contentions of the parties, it may be well to remember that the superior power is with the state, and that, speaking generally, the city's only power is that delegated to it by the state.

An examination of the statutes with reference to the occupation or trade of barbering shows that both the state barber board and the state board of health have power to make rules and regulations with respect to sanitary regulation. Whatever overlapping of authority there may be there need not concern us. The question is whether

the city can add to the regulation which the legislature has committed to two boards created by it. It need not be demonstrated beyond mere statement that the ordinance has been enacted without regard to the statutory provisions, and that under its terms one may obtain a license from the board created by the ordinance and follow the occupation of barber in Topeka without having the certificate required by the state law, and, at the same time, one duly licensed by the state may be guilty of a misdemeanor if he attempts to follow his occupation in Topeka without getting the health certificate and license required by the ordinance. Assuming that the city license and state certificate regulations can be made to fit into a pattern whose legality cannot be questioned and that the barber procures both, he then must comply with the three sets of sanitary rules laid down by the state board of health, the state barber board and barber sanitary and examining board of the city of Topeka. If he does all that, he can then cut hair or shave beards without fear of violating one of two state laws or the ordinance now questioned.

In support of its contention the enactment of the ordinance was proper, the city directs our attention to *Jones v. City of Coffeyville,* 136 Kan. 796, 18 P. 2d 174, where it was said:

"In exercising the police power a city is not required to have its ordinance conform in all respects to the state law upon the same subject (*Kansas City v. Henre,* 96 Kan. 794, 153 Pac. 548; *Garden City v. Legg,* 126 Kan. 569, 268 Pac. 827), unless there is a statute or other controlling authority which so limits the power of the city." (p. 797.)

Our attention is also directed to the two cases therein mentioned.

In the Henre case, attack was made on an ordinance providing that milk sold must have a greater solid content than fixed by a state statute. The ground was the ordinance was in excess of the power of the city and in conflict with the state regulation on the same subject. In upholding the ordinance it was said:

"One of the purposes specifically named is to make regulations to secure the general health of the city. (Gen. Stat. 1909, §§ 1243, 1278.) The ordinance regulating the sale of milk comes clearly within the power so conferred, and unless it conflicts with the statutes or constitution or is clearly unreasonable it must be upheld. It is well settled in this state that where power is conferred upon cities to enact ordinances for the preservation of peace and good order within the city or for the preservation of the health of its inhabitants it may be exercised although the legislature has provided state regulations on the same subjects. (*Franklin v. Westfall,* 27 Kan. 614; *Monroe v. City of Lawrence,* 44 Kan. 607, 24 Pac. 1113, 10 L. R. A. 520; *In re Thomas, Petitioner,* 53 Kan. 659, 37 Pac. 171; *In re Jahn, Petitioner,* 55 Kan. 694, 41 Pac. 956;

*Assaria v. Wells,* 68 Kan. 787, 75 Pac. 1026.) An ordinance may not be enacted which conflicts with or will operate to nullify the state law. (*Assaria v. Wells,* supra; *In re Van Tuyl,* 71 Kan. 659, 81 Pac. 181.) A city may not by ordinance authorize that which a statute prohibits nor punish the doing of an act which the statute expressly authorizes, but, as we have seen, it is competent for a city, under the authority of the legislature, to provide that an act shall be an offense against the authority of the city although the same act is made an offense against the state. An ordinance enacted in the exercise of the police power is not necessarily inconsistent with a state law on the same subject because the city provides for greater restrictions or makes higher standards than is provided or made by the statute. (*Walker v. Railway Co.,* 95 Kan. 702, 149 Pac. 677.) Nor is an ordinance repugnant to a statute merely because the penalty prescribed is greater than is fixed by the statute for the commission of a like offense. (*Minneola v. Naylor,* 84 Kan. 147, 113 Pac. 309; *Stark v. Geiser,* 90 Kan. 504, 135 Pac. 666.)" (*Kansas City v. Henre,* 96 Kan. 794, 796, 153 Pac. 827.)

In the Legg case an ordinance making drunkenness any place within the city an offense was upheld, although as denounced in the state law it was limited to streets, highways, public places and buildings, or if the person be drunk in his own home or in a private building or place and disturbing his family or others.

If these cases are controlling, judgment must be for the city.

Although the state law, with reference to the sale of milk considered in the Henre case, has been amended, it did not then and does not in its present form (G. S. 1935, ch. 65, art. 7) require the producer selling milk to obtain a license so to do, nor does it do more than to establish a standard for dairy products, making it an offense to sell substandard products. The ordinance did not grant any right denied by the state law, nor did it interfere with any right granted, for the state law did not pretend to grant a right to sell milk. The Legg case is not controlling here, for it was there held the ordinance under attack covered a field in addition to that covered by the state law and hence could not be said to be repugnant to it.

If it be assumed that the above cases require us to hold the ordinance valid, a large field is disclosed where similar ordinances would be good. G. S. 1935, chapter 65, deals with the public health generally and provision is made for the examination and registration of those engaged in various professions and occupations, viz.: article 10 applies to doctors of medicine; article 11 to trained nurses; article 12 to osteopathic physicians; article 13 to chiropractors; article 14 to dentists; article 15 to optometrists; article 16

to pharmacists; article 17 to embalmers and funeral directors; article 18 to barbers; article 19 to cosmetologists and article 20 to podiatrists. And the most recent enactments are Laws 1937, chapter 270, giving a right of action by injunction or quo warranto with respect to unlawful practice of medicine and surgery, and chapter 278 providing for examination in basic sciences under certain conditions. In each of the above professions and occupations, examinations are required and permits to practice are granted, and regulation in considerable detail is provided. If the city may ignore these requirements and regulations with respect to barbers, and set up its own standards and requirements, and in some particulars refuse rights granted by the state and in others confer rights refused by the state, then it may do the same with doctors, dentists and the other professions and occupations above listed. An ordinance setting up a medical sanitary and examining board, pertaining to doctors of medicine and surgery, and containing substantially identical provisions for examinations, licenses, office practices, inspections, taxes, etc., and granting licenses to doctors not registered by the state and denying doctors licensed by the state a right to practice, would be equally as good as the ordinance here attacked. Although it be conceded that the state has granted power to the city to enact ordinances to guard the public health, it does not follow that an ordinance of the city may ignore the state's own regulatory acts, or deny rights granted by the state or grant rights denied by the state, and in effect nullify the state law.

Although the ordinance contains a saving clause that invalidity of one section shall not affect the remainder, we find it impossible to make a separation so as to say that any portion can remain effective. There is no purpose to be served by the examining board, for it has no function legally to be performed; the only purpose of the tax or license fee imposed is to pay the salary of the board and of the inspector, and the state having fully legislated on the subjects over which they would have control under the ordinance, they have no duties to perform the expense of which might be defrayed by collection of license fees. The statutes do not authorize collection of occupation taxes by a city of the first class of less than 120,000 population (see *McKay v. City of Wichita,* 135 Kan. 678, 682, 11 P. 2d 733, and G. S. 1935, 13-1906, enacted after it was decided), and hence, the ordinance may not be justified as for that purpose. We conclude that there is no part of the ordinance that

would have been enacted if the criticized portions were excised, and that it is void in its entirety.

The ruling of the trial court sustaining the demurrer to plaintiff's petition is reversed, and the cause remanded with instructions to enter judgment declaring the ordinance void.