No. 33,804

A. R. Moore, *Appellee*, v. The City of Pratt, Dale Earlywine, Guy W. Sitton and O. K. Stewart, as the Board of City Commissioners of the City of Pratt, and John Tregellas, as Building Inspector of said City, *Appellants*.

(79 P. 2d 871)

Opinion filed June 11, 1938,

*M. C. Bucklin,* of Pratt, for the appellants.
*William B. Hess,* of Pratt, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for a declaratory judgment as to the validity of a zoning ordinance of the city of Pratt, a city of the second class having a commission form of government. Plaintiff prays the ordinance be adjudged void, and in the alternative that it be interpreted, and that it be adjudged plaintiff's building was not constructed in violation thereof. Issues were joined, and after a hearing the court held the ordinance to be void, for two reasons: (1) That no notice, as required by law, was given by the planning commission of the time and place for public hearings prior to the making of its final report on the ordinance to the city commission; and (2) that the city had no power under the state zoning law to establish building set-back regulations, as provided in the ordinance. Defendants have appealed.

The facts pertinent to this appeal may be stated as follows: On October 27, 1927, the defendant city enacted an ordinance, No. 214, dividing the city into zones, or districts, for the purpose of regulating and restricting the location of trades, industries and commercial

enterprises, and the location, erection, alteration and repair of buildings and other structures designed for a specific use, and regulating the area of the front, rear, side yards, and other open spaces about buildings; limiting the height of buildings and other structures thereafter constructed; limiting the density of population, and providing a penalty for the violation of the ordinance. It divided the city into four use districts—residence districts, neighborhood business districts, business districts, and industrial districts, the boundaries of which were set out; and it provided that thereafter no building should be erected or structurally altered unless it conformed to the provision of the ordinance pertaining to buildings in the district in which it was situated. With respect to the location of buildings in the residence district it provided that "the depth of the front yard, measured back from the street line, shall not be less than thirty (30) feet," with an exception not here important.

The city also had an ordinance regulating the construction of buildings, the issuance of permits therefor, providing for a building inspector, prescribing his duties, authorizing him to stop work on any building being constructed not in harmony with the ordinance, and providing for an appeal from his orders or rulings.

In June, 1937, plaintiff owned a fifty-foot lot, facing east, on Oak street, in that part of the city zoned as a residence district, on which he desired to construct a building for residence purposes. He caused an application to be made to the building inspector for a permit to construct the building. This showed the location of the building to be set back thirty feet from the front line of the lot, and otherwise to conform to the ordinance. The permit was granted. In constructing the building an extension was being built some distance to the north and about six feet east of the structure as shown on the application for the permit. This had the effect of reducing the front-yard set-back distance to about twenty-four feet. The building inspector observed this and ordered the work on the extension to be stopped. No appeal was taken from his order. Instead of doing so plaintiff brought this action.

We now take up the questions ruled upon by the trial court in holding ordinance No. 214 to be void, from which the appeal was taken. The first of these is: Does the evidence sustain the finding that no notice, as required by law, was given by the planning commission of the time and place for public hearings on the ordinance prior to the making of its final report to the city commission? The pertinent portion of the statute on this point reads as follows:

"In a municipality having a city planning commission created pursuant to law, the governing body shall require such commission to recommend the boundaries of districts and appropriate regulation to be enforced therein. Such commission shall make a tentative report and hold public hearings thereon at such times and places and upon such notices as said governing body shall require before submitting its final report. The governing body shall not determine the boundaries of any district nor impose any regulations until after the final report of such city planning commission. . . ." (G. S. 1935, 12-708.)

The only evidence produced by plaintiff on this point was from the minutes of the meetings of the planning commission and of the city commission. These disclosed that the city, by ordinance, created a planning commission April 1, 1926. The first minutes of the planning commission offered in evidence were of its meeting December 21, 1926, at which time Harold D. Smith, consultant for the League of Kansas Municipalities, was present and made an estimate of the cost of preparing the zoning ordinance and maps for the city, and by vote of the commission was instructed to proceed with the work. At this meeting on January 21, 1927, the proposed zoning ordinance, together with maps, was presented, and it was decided that one map be placed in the window of the First National Bank and the other in the Chamber of Commerce window, and that each member of the commission study a copy of the ordinance and be prepared to discuss the same at the next regular meeting. This appears to have been on April 1, 1927, at which time the mayor and two of the city commissioners were present, and the ordinance was gone over quite thoroughly and suggested changes made, and the meeting was adjourned to April 9, 1927. At that meeting the proposed ordinance was gone over and suggested changes decided upon, and a resolution was passed recommending to the mayor and city commissioners the passage of the ordinance, and that it meet and authorize the publication of notices and set the date and place for public hearings upon the proposed ordinance. On May 14, 1927, a meeting was had, at which citizens were present, and a discussion was had as to whether certain blocks should be placed in the business zone, and other suggestions were made as to placing certain property in the residence section, and the secretary was instructed to notify certain citizens to get their views with respect to the zoning of property. The meeting was adjourned to May 17, at which time there was a lengthy discussion with respect to the zoning of certain blocks, and the secretary was instructed to notify all property owners within the block to be present at an adjourned meeting to be held May 26, 1927. The minutes of the

meeting on that date show that a number of persons were present, and at that time some changes were made in the proposed ordinance on the motion of citizens present. Finally, the drafting of the proposed ordinance was completed and it was reported to the city commission, and on August 18, 1927, the ordinance was enacted by the city commission, the minutes showing all of the votes of the commissioners to be in the affirmative. A mistake was made in the publication of the ordinance as then enacted. The map of the city, showing the districts as zoned, and which was a part of the ordinance, was not published. Thereafter, and on October 27, 1927, the ordinance was again enacted by the city commission and was duly published. No contention is now made that there was any irregularity in the final enactment and publication of the ordinance.

From this record it cannot fairly be said there were no public hearings respecting the proposed ordinance by the planning commission. Several of its meetings were attended by the public, some of whom made suggestions or motions, which were adopted, for changes in the proposed draft. More than that, apparently when it was thought persons not present were specially interested in the zoning of certain blocks in the business or residence districts the secretary was instructed to notify them to be present at an adjourned meeting to be held on a date named. The time of most of these meetings was fixed in advance. All meetings were held in the rooms of the Chamber of Commerce, hence there is no room to quibble over the time and place of the meetings. Plaintiff suggests no prejudice to him because of the lack of meetings, or of notices of meetings of the planning commission. From all that appears in this record he may have known all about the meetings; indeed, he may have attended them. In support of the court's ruling on this point, appellee points out that the minutes of the city commission offered in evidence do not show any direction by the city commission to the planning commission of the kind of notice it should give of its meeting. This point is not fatal, for several reasons: *First,* it is not definitely established that the minutes of the city commission offered in evidence were all of the minutes on that point. True, a witness testified that he looked through the minute book and that the minutes offered in evidence were all he found on that point; but this is not conclusive that he found all there were in the book. *Second,* the minutes may not have been kept fully and completely as to all details of the business transacted by the city commission.

Indeed, taking the record as a whole, there is evidence that was not done; hence, directions may have been given by the city commission to the planning commission which were not entered in the minutes. *Third*, the statute above quoted makes it discretionary with the city commission what, if any, directions it shall give to the planning commission. A careful reading of the statute discloses that it is not specifically required to give any directions to the planning commission on this point. The evidence discloses that the mayor and at least two of the commissioners were present at several of the meetings of the planning commission when the ordinance was being discussed. Obviously, they were familiar with the meetings being held and the notices of the meetings which were given. There is no intimation in this record that either the city commission or the planning commission was attempting secrecy in the framing of this ordinance. Indeed, the contrary appears. There was some public notice given at an early meeting. The meetings were adjourned from time to time to specific dates, and specific notice appears to have been given to any and all not present thought to be especially interested. We find no reason to say that these meetings, or the notices of them, were either inadequate or unlawful.

Since the ordinance was duly passed and published, there is a strong presumption of law that precedent legal requirements were conformed to. (*Downing v. City of Miltonvale*, 36 Kan. 740, 14 Pac. 281; *State, ex rel., v. City of Atchison*, 92 Kan. 431, 140 Pac. 873; *Horner v. City of Atchison*, 93 Kan. 557, 144 Pac. 1010; *State, ex rel., v. City of Harper*, 94 Kan. 478, 146 Kan. 1169; *State, ex rel., v. City of Hutchinson*, 109 Kan. 484, 207 Pac. 440.)

In view of all of the matters hereinbefore discussed, it is clear that plaintiff's showing on the lack of public hearings before the planning commission was insufficient as a basis for holding that the ordinance was void.

The other point from which defendants appealed was the holding of the trial court that the city had no power under the state zoning law to establish building set-back regulations as provided in the ordinance. The pertinent statute reads:

"That the governing body of any city is hereby authorized by ordinance to divide such city into zones or districts, and regulate and restrict the location of trades and industries, and the location, erection, alteration and repair of buildings designed for specific uses, and the uses of the land within each district or zone." (G. S. 1935, 12-707.)

It will be observed the statute authorizes cities by ordinance to regulate and restrict "the location . . . of buildings designed for specific uses." In *Ware v. City of Wichita*, 113 Kan. 153, 214 Pac. 99, this statute was held valid, as was also an ordinance passed by virtue of it, which ordinance, among other things, contained restrictions and regulations concerning the set-back of buildings in the residence districts. It has been cited in other cases as supporting the view that a provision of that kind in such an ordinance, under a statute such as ours, is valid. There was some conflict of authorities in state courts on this point prior to the decision of the supreme court of the United States in *Gorieb v. Fox*, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1225. There an ordinance of the city of Roanoke, Va., predicated upon a statute of that state, contained restrictions and regulations pertaining to the set-back of a building in the residence district. The state supreme court had held the statute and ordinance valid (*Gorieb v. Fox, et al.*, 145 Va. 554, 134 S. E. 914), and on certiorari to the supreme court of the United States that judgment was affirmed. In the opinion it was said:

"It is hard to see any controlling difference between regulations which require the lot owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street. Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property. All rest for their justification upon the same reasons which have arisen in recent times as a result of the great increase and concentration of population in urban communities and the vast changes in the extent and complexity of the problems of modern city life. . . . State legislatures and city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character, and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable. . . .

"The courts, it is true, as already suggested, are in disagreement as to the validity of set-back requirements. An examination discloses that one group of decisions holds that such requirements have no rational relation to the public safety, health, morals, or general welfare, and cannot be sustained as a legitimate exercise of the police power. The view of the other group is exactly to the contrary. In the Euclid case (*Euclid v. Ambler Co.*, 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct. 114), upon a review of the decisions, we rejected the basic reasons upon which the decisions in the first group depend and accepted those upon which rests the opposite view of the other group. Nothing we think is to be gained by a similar review in respect of the specific phase of the general question which is presented here. As to that, it is enough to say that, in consonance with the principles announced in the Euclid case, and upon what, in

the light of present-day conditions, seems to be the better reasons, we sustain the view put forward by the latter group of decisions." (pp. 608, 609.)

See, also, *Bouchard v. Zetley*, 196 Wis. 635, 220 N. W. 213; *Nusbaum v. Norfolk*, 151 Va. 801, 145 S. E. 259; *Weiss v. Guion*, 17 F. 2d 202; *Thille v. Board of Public Works*, 82 Cal. App. 187, 255 Pac. 294; *Sampere v. City of New Orleans*, 166 La. 776, 117 So. 827; *Bancroft v. Building Commissioner*, 257 Mass. 82, 153 N. E. 319; *Sladk v. Inspector of Bldgs. of Wellesley*, 262 Mass. 404, 160 N. E. 285; *State, ex rel. McKusick, v. Houghton*, 171 Minn. 231, 213 N. W. 907.

We think this authority puts to rest any question about the validity of the ordinance with respect to the set-back provision and forces the conclusion that the ordinance was not void for that reason.

Counsel for appellee, in support of the view that reasons other than those given by the trial court justified its holding that the ordinance was void, has made an extensive, intricate and ingenious argument respecting our original zoning statute (Laws 1921, ch. 100) and its amendments (Laws 1925, ch. 100; Laws 1927, ch. 110), from which he reaches the conclusion that the statute as it now stands (G. S. 1935, 12-707) is invalid. We have carefully considered all counsel has said on that question and find the point not to be well taken. We consider a detailed statement and analysis of the several suggested phases of the question to be unnecessary.

Since the trial court held the ordinance void, it did not interpret the ordinance, nor pass upon the question raised by the pleadings, as to whether plaintiff's building had been constructed in violation of it. The judgment of the trial court holding the ordinance void should be reversed with directions to proceed to determine such other questions as are in the case. It is so ordered.