No. 46,380

CITY OF LYONS, *Appellant,* v. MONTY SUTTLE, *Defendant.*

CITY OF LYONS, *Appellant,* v. TIM NEWMAN, *Defendant*

(498 P. 2d 9)

Opinion filed June 16, 1972.

*Firman G. Gladow,* of Lyons, argued the cause and was on the brief for the appellant.

*Wendell E. Yockey,* of Topeka, was on the brief for the League of Kansas Municipalities, *Amicus Curiae.*

The opinion of the court was delivered by

FROMME, J.: The question to be answered in this appeal is whether Section 2 of an ordinance of the City of Lyons, Kansas, which prohibits any person, while in a vehicle upon the public ways and streets of that city, from drinking cereal malt beverage or from having in his possession an open container of cereal malt beverage is constitutionally permissible.

The defendants, Monty Suttle and Tim Newman, were arrested on separate occasions in the early morning hours by the police in Lyons, Kansas. They were separately charged and convicted in

the municipal court of violating Section 2 of ordinance No. 1247. The two convictions were appealed to the District Court of Rice County. Separate trials *de novo* to the court resulted in acquittals for both defendants. The question of the constitutionality of the ordinance on which the acquittals were based was reserved by the City of Lyons and this appeal followed.

Ordinance No. 1247 of the City of Lyons in pertinent part provides:

"Section 2. Any person who shall drink or consume cereal malt beverages or have in his possession an open container of cereal malt beverages while in any vehicle upon the public highways, roads, streets, alleys, sidewalks, parks or any other municipally owned or public facility, shall upon conviction thereof be deemed guilty of a misdemeanor and shall be punished as hereinafter provided."

The uncontradicted evidence introduced or stipulated in both of the cases established that each defendant was arrested while transporting an open container of cereal malt beverage in a motor vehicle upon the streets of the City of Lyons, Kansas. Disregarding the evidence the district judge found each of the defendants *not guilty*. The reason given by the judge for the acquittals was as follows:

". . . because of lack of constitutionality of City Ordinance No. 1247 of the City of Lyons, Kansas, for the reason that said ordinance is simply an ordinance to enable the arrest of undesirable persons because they are undesirable, not because they have done something contrary to the public interest."

At the outset we note the record is wholly devoid of evidence bearing upon the habits, character or undesirability of either of the defendants. We have difficulty in understanding the basis which the district court gave for its holding. The defendants below did not appear on appeal and we have no guidance from them.

The acquittals by the court are premised upon the statement that the ordinance is unconstitutional because it is simply an ordinance to enable the arrest of undesirable persons because they are undesirable. As previously pointed out the statement is wholly without a basis in the evidence. However, such a statement might indicate reliance by the judge on recent cases from the United States Supreme Court striking down certain vagrancy ordinances. One of these cases is *Papachristou v. City of Jacksonville,* 405 U. S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839. In *Papachristou* the high court referred to the vagrancy ordinance as a net making it easy to roundup

so-called *undesirables*. These vagrancy ordinance cases are not in point here. The ordinances in those cases are held to be constitutionally impermissible because of ambiguity and vagueness in the description of persons affected. In *Papachristou* the ordinance attempted to permit the arrest of rogues, vagabonds, dissolute persons, beggars, gamblers, jugglers, drunkards, night walkers, thieves, pilferers, lewd persons, wanderers, loafers and persons neglecting all lawful business. In holding the ordinance unconstitutionally vague the high court stated the ordinance failed to give a person of ordinary intelligence fair notice of what specific behavior was forbidden and it encouraged arbitrary and erratic arrests and convictions.

No similar charge could be upheld against the present section of the ordinance for the acts prohibited are clearly set forth in ordinance No. 1247. Any person of ordinary intelligence can understand what conduct is forbidden, *i.e.*, a person (whether undesirable or not) while in a vehicle upon the public ways or streets, shall not drink cereal malt beverages and such person shall not have in his possession an open container of cereal malt beverage. The present ordinance is not vague under the federal cases. It is not vague under the Kansas law set forth in *State v. Hill*, 189 Kan. 403, 369 P. 2d 365, 91 A. L. R. 2d 750.

The holding by the district court might also indicate it felt the present ordinance was not a proper exercise of the police power by the city governing body. The appellant in its brief speaks to that question, so we will primarily address ourselves to that area of constitutional law.

What are the boundaries for a valid exercise of the police power by a municipality in the area of constitutional law?

In *Grigsby v. Mitchum*, 191 Kan. 293, 380 P. 2d 363, the boundaries to be considered are defined as follows:

"Almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, or involve an injury to a person, or deprive a person of property within the meaning of the Fourteenth Amendment to the Constitution of the United States. Nevertheless, it is well settled that an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and if it is not unreasonable or arbitrary.

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are com-

mitted in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." (p. 302)

One additional limiting factor on the exercise of the police power by a municipality may arise by reason of state pre-emption by means of legislative fiat. State pre-emption in the area of consumption of alcoholic liquor was discussed but found not to exist in *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 733, 495 P. 2d 524. There we noted the pre-emptive clause contained in the Liquor Control Act (K. S. A. 41-208) contained no reference whatever to the consumption of alcoholic liquor. In *Blue Star Supper Club* we said:

"In concluding that the regulation and control of the consumption of alcoholic liquor is not an area exclusively reserved by the state we believe it is significant that when the legislature adopted K. S. A. 1971 Supp. 41-2631 as a component part of the Private Club Act, and forbade therein the enactment of any ordinance conflicting with the act, it did not include a pre-emptive provision. . . ." (p. 735)

An examination of the provisions of the Cereal Malt Beverage Act (K. S. A. 41-2701 *et seq.*) discloses no pre-emptive clause of any kind in that act. We conclude that control of the consumption of cereal malt beverages is not an area of concern exclusively reserved by the state.

Now let us inquire as to whether the consumption of cereal malt beverages, regardless of the percentage of alcoholic content, bears a substantial relation to the public health, safety, morals and general welfare of the public.

Beverages with some alcoholic content have long been considered of such a nature and effect that laws regulating sales and consumption have been passed and enforced. In the *Intoxicating-Liquor Cases*, 25 Kan. 751 (1881), various concoctions with varying alcoholic content, such as McLean's cordial, tolu and wild cherry and prickly-ash bitters, were discussed. It was held that whether their manufacture and sale was illegal under the prohibitory law depended upon whether their primary use was for beverage purposes. In *Monroe v. City of Lawrence*, 44 Kan. 607, 24 Pac. 1113, it was thought that the tendency of cider to ferment was sufficient to justify regulation of sales of that beverage. In the case of *In re Jahn, Petitioner*, 55 Kan. 694, 41 Pac. 956, sales and consumption of hot-tea which contained 2% or less alcohol by weight was restricted.

At the present time Kansas has two separate laws directed toward regulation and control of beverages with an alcoholic content. The first is the Kansas Liquor Control Act (K. S. A. 41-101 *et seq.*) which applies to beverages including beer with an alcoholic content of more than 3.2% by weight.

A provision in the Kansas Liquor Control Act makes it unlawful for any person to transport in any vehicle upon a public highway, street or alley any alcoholic liquor except in the original package which shall not have been opened. Opened containers may be transported if placed in a locked outside compartment not accessible to the driver and passengers. (K. S. A. 41-804.) However, in the absence of a pre-emptive clause, 41-804 does not prevent a municipality from adopting a similar ordinance so long as the ordinance does not conflict with the state law. As previously held in *Blue Star Supper Club* the regulation and control of the consumption of such beverage alcohol is not an area exclusively reserved by the state.

In *City of Garden City v. Miller,* 181 Kan. 360, 311 P 2d 306, it was pointed out:

"The fact that the state has enacted legislation on a subject does not necessarily deprive a city of the power to deal with the same subject by ordinance. [Citations omitted.] A municipality may legislate on the same subject so long as the municipal ordinance does not conflict with the state law [Citations omitted.], and if there is no conflict, both laws may stand. . . ." (p. 366)

(See also *Leavenworth Club Owners Assn. v. Atchison,* 208 Kan. 318, 492 P. 2d 183; and *Blue Star Supper Club, Inc. v. City of Wichita,* supra.)

The second state law directed toward control over beverages with an alcoholic content is the Cereal Malt Beverage Act (K. S. A. 41-2701, *et seq.*) which applies to cereal malt beverages containing no more than 3.2% of alcohol by weight. This act contains no state prohibition against the transportation of such beverages in opened containers. The act does provide for licensing and regulating the sale of the beverage at retail on a city or county level. Under the provisions of the act the governing body of the city may prescribe hours of closing, standards of conduct, and rules and regulations concerning the moral, sanitary and health conditions of the places licensed. The act prohibits persons under eighteen years of age from buying or drinking any of such beverages in or about the licensed premises. (See K. S. A. 41-2704 as amended.)

We see no conflict in the provisions of these two legislative acts (K. S. A. 41-101 *et seq.*, and K. S. A. 41-2701 *et seq.*) and the city ordinance with which we are presently concerned.

The state laws which exist in this area of concern adequately attest to the fact that regulations pertaining to transportation of open containers and consumption of beverages containing alcohol are generally considered to be within a proper exercise of the police power. (See also *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 408 P. 2d 877; and *State v. Logan*, 198 Kan. 211, 424 P. 2d 565.) We see no reason why municipalities may not regulate and limit the transportation and consumption of cereal malt beverages on city streets if such regulation does not conflict with existing state laws.

The present ordinance should be accorded a presumption of validity. (*State ex rel., v. City of Atchison*, 92 Kan. 431, 140 Pac. 873; *Moore v. City of Pratt*, 148 Kan. 53, 79 P. 2d 871; *Truck-Trailer Supply Co. Inc. v. Farmer*, 181 Kan. 396, 311 P. 2d 1004.) When an ordinance is not oppressive or unreasonable it is the duty of a court to hold it valid, provided it does not conflict with the limitations placed upon the municipality by the constitution or laws of the state.

It must be kept in mind that courts cannot set aside ordinances unless they are unconstitutional, *ultra vires*, and under certain conditions unreasonable. If there is room for fair debate the court will not substitute its own judgment of reasonableness for that of the legislative body charged with the primary duty and responsibility of determining the question of reasonableness. In considering a police power ordinance the court merely considers whether the object of the ordinance is a proper one and whether the means adopted to accomplish that object are appropriate. (16 Am. Jur. 2d, Constitutional Law, § 278.)

This court can take judicial notice of the problems created by drinking beverages containing alcohol while driving a motor vehicle. If alcohol is consumed in sufficient quantities a person loses some of his normal powers of coordination and perception. This may affect a driver's ability to perceive and react to traffic conditions which confront him during ordinary driving. "Driving while under the influence" is listed on the accident reports of this state as a contributing cause of many serious vehicular accidents. The present ordinance appears to be directed toward reducing

the incidence of vehicular accidents contributed to by drinking cereal malt beverages while driving.

Various regulations governing the use of highways by the motoring public to protect the public safety and welfare have been held to be a proper exercise of the police power. In *Pinkerton v. Schwiethale*, 208 Kan. 596, 493 P. 2d 200, it was said:

"The use and ownership of motor vehicles generally have been considered proper areas of concern for the exercise of the police power. Various laws restricting rights arising from the use and ownership of motor vehicles have been found constitutionally permissible." (pp. 599, 600)

We believe the object of this police power ordinance is a proper one and that the means adopted to accomplish that object are appropriate. We believe the district court should not have substituted its own judgment of reasonableness for that of the city governing body.

We also feel the trial court misconstrued the meaning of the word, unconstitutional. Unconstitutional, as understood and applied by the courts, means that the ordinance assailed is in conflict with some provisions of the constitution or law and not that it is considered unwise, conflicts with generally accepted policy or is contrary to sound principles. (See *United States v. American Brewing Co.* (Pa.) 1 F. 2d 1001 (E. D. Pa. 1924); and *Ketterer v. Lederer*, 269 F. 153 (E. D. Pa. 1920.)

A Pennsylvania court expressed a legally accepted meaning for the term "unconstitutional" in this manner:

"Whatever else may be said of legislation, it is not unconstitutional in the legal meaning of that term as used in America, unless the legislation be in conflict with a provision of our written Constitution. In other words, the enactments of our Legislatures and of Congress are not unconstitutional merely because unwise, or in conflict with sound principles of legislation, but because the statutory enactment conflicts with a constitutional provision. . . ." (*Pennsylvania Co. for Ins. on Lives, etc. v. Lederer*, 292 F. 629 (E. D. Pa. 1921) at p. 632.)

In summary, the consumption of beverages containing alcohol and the use of the streets by motorists have long been the subjects of regulation under the police power. These subjects bear a real and substantial relation to the public safety and welfare. Section 2 of ordinance No. 1247 of the City of Lyons is a proper exercise of the police power. Neither the state Liquor Control Act nor the state Cereal Malt Beverage Act contain a pre-emptive clause which would preclude the adoption of the present section of the ordi-

nance. We find no conflict between Section 2 of the ordinance and any state laws dealing with these subjects. We are not able to say that Section 2 of the ordinance is unreasonable without substituting our judgment for the judgment of the city governing body which is charged with the primary duty and responsibility of determining the question of reasonableness. Section 2 of ordinance No. 1247 of the City of Lyons is not unconstitutional for any of the reasons discussed herein.

Accordingly the appeal is sustained .

SCHROEDER, J., dissenting: Without any briefing whatever to support the trial court's decision, the court here in a far reaching precedent authorizes municipalities of the state to enact their own criminal laws, thereby opening the door for provincialism to go rampant.

Ordinance No. 1247 of the city of Lyons makes it a *misdemeanor* for "Any person who shall drink or consume cereal malt beverages *or have in his possession an open container of cereal malt beverages while in any vehicle* upon the public highways, roads, streets, alleys, sidewalks, parks or any other municipally owned or public facility." (Emphasis added.)

Separate trials of the two defendants in the district court resulted in acquittals for both defendants, the trial court holding the ordinance in question unconstitutional. Appeal was perfected by the city of Lyons on a reserved question, but the defendants made no appearance in this court nor did they file briefs. Counsel for the city of Lyons filed a brief, and in addition the League of Kansas Municipalities filed a brief *amicus curiae,* both seeking to overturn the trial court's decision.

The court premises its decision upholding the ordinance upon the ground that its enactment was a proper exercise of the *police power* by the city governing body. The subject matter was treated under the police power on the theory that "Beverages with some alcoholic content have long been considered of such a nature and effect that laws regulating *sales and consumption* have been passed and enforced." (Emphasis added.)

My dissent is premised upon the theory that the subject matter of the ordinance has been *pre-empted* by the state and the ordinance is also in *conflict* with state law.

K. S. A. 1971 Supp 21-3102, in speaking of the scope and application of the Kansas criminal code, reads in part:

"(1) No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code *or in another statute of this state,* . . ." (Emphasis added.)

The foregoing is an emphatic declaration by the legislature that the field of criminal law has been pre-empted by the state.

Some states have held that the penal system adopted by a state constitutes a complete legislative scheme intended to occupy the field. (*Abbott v. City of Los Angeles,* 53 C. 2d 674, 3 Cal. Rptr. 158, 349 P. 2d 974; *Kim v. Town of Orangetown,* 66 Misc. 2d 364, 321 N. Y. S. 2d 724; and *City of Baytown v. Angel,* 469 S.W. 2d 923 [Tex. Civ. App. 1971].) Other jurisdictions have said that a municipality being a creature of the state and deriving its governmental powers from the state, cannot prohibit what the state permits. (*State v. Brennan,* 3 Conn. Cir. 413, 216 A. 2d 294.)

The rule denying power to a local body when the state has pre-empted the field is a rule of necessity, based upon the need to prevent dual regulations which could result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only upon the language of the statutes adopted, but upon the purpose and scope of the legislative scheme. (*Abbott v. City of Los Angeles,* supra.)

The primary method of determining whether an ordinance is inconsistent with the penal law of the state is to see *whether the local law prohibits anything which the state law permits.* Where an act permissible under the state law becomes a violation of the local law, the local law is unauthorized. (*Kim v. Town of Orangetown,* supra, and the many authorities cited therein.)

The state statute prohibiting the transportation of alcoholic liquor in opened containers accessible to the driver in any vehicle upon the public roads is K. S. A. 41-804. It reads:

"It shall be unlawful for any person to tranport [transport] in any vehicle upon a public highway, street or alley any alcoholic liquor except in the original package or container which shall not have been opened and the seal upon which shall not have been broken and from which the original cap or cork shall not have been removed, unless the opened package or container be in the locked rear trunk or rear compartment, or any locked outside compartment which is not accessible to the driver or any other person in said vehicle while it is in motion. Any person violating this section shall be deemed quilty of a misdemeanor, and upon conviction shall be punished by a fine or not more than two hundred ($200) or by imprisonment for not more than six (6) months or by both such fine and imprisonment."

The foregoing criminal statute is a part of the "Kansas liquor control act." (See K. S. A. ch. 41, "Intoxicating Liquors and Beverages;" L. 1949, ch. 242.)

In the "Kansas liquor control act" "alcoholic liquor" is defined *for purposes of the act* in K. S. A. 1971 Supp. 41-102 as follows:

"(2) 'Alcoholic liquor' includes the four varieties of liquor as defined herein, namely, alcohol, spirits, wine and beer, and every liquid or solid, patented or not, containing alcohol, spirits, wine or beer, and capable of being consumed as a beverage by a human being, *but shall not include any beer or cereal malt beverage containing not more that [than] three and two-tenths percent (3.2%) of alcohol by weight.*" (L. 1965, ch. 314, § 1.) (Emphasis added.)

From the foregoing sections of the "Kansas liquor control act" it is apparent the state law of Kansas prohibits the *transportation* of alcoholic liquor by any person in opened containers accessible to the driver in any vehicle upon a public highway, street or alley, but it is not made a crime to transport opened containers of cereal malt beverage containing not more than 3.2% of alcohol by weight. The sale of such cereal malt beverage is permitted in grocery stores.

The Attorney General of Kansas in an opinion dated May 27, 1966, on "Procedure, Crimes, Intoxicating Liquors" addressed to Judge Gwartney ruled that the legislature did not intend to include cereal malt beverages containing not more than 3.2% alcohol by weight in the phrase "intoxicating liquor" as used in K. S. A. 1965 Supp. 38-715.

The ordinance here in question *does not require the transportation* of an opened container of cereal malt beverage upon the public roads or facilities by any person, but merely requires *the possession of an opened container of cereal malt beverage by a person who is in a vehicle in such places.* The vehicle may be parked on a municipally owned or public facility. The opened container of cereal malt beverage may be empty, and intention or knowledge on the part of the person charged that the opened container is in the vehicle is not an element of the offense. The mere possession in the vehicle is sufficient. Such acts denounced as a crime by the ordinance have no relationship whatever to the *sale or consumption* of "alcoholic liquor," the premise upon which the court's decision is written.

Furthermore, the ordinance does not define "cereal malt beverage" which appears to be all-inclusive, regardless of alcoholic content. It fails to differentiate cereal malt beverage containing

not more than 3.2% of alcohol by weight from cereal malt beverage containing a greater quantity of alcohol by weight. On this point the ordinance is void for vagueness. (*Papachristou v. City of Jacksonville,* 405 U. S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839.)

It is therefore abundantly apparent the ordinance in question prohibits acts which are permitted by the state law of Kansas. Thus, the ordinance is in conflict with the state law. The ordinance tends to nullify a state law and, in my opinion, it is void.

The authority of a municipality to abrogate state law can never be implied or inferred. It is only derived from express grant, never from a general grant of power. (*Kim v. Town of Orangetown,* supra.) This has been expressly recognized in *City of Garden 'City v. Miller,* 181 Kan. 360, 311 P. 2d 306. There the uniform act regulating traffic on highways (G. S. 1949, 8-501, *et seq.,* as amended) was said to be a complete and independent code dealing with the subject of vehicle and pedestrian traffic, and was intended to be applicable and uniform throughout the state and in all political subdivisions and municipalities. The court said local authorities could not enact or enforce rules or regulations in conflict with its provisions unless *expressly authorized.* However, the court there recognized that local authorities could enact additional traffic regulations pursuant to G. S. 1949, 8-507 (wherein *express authority* was granted to municipalities) *which do not conflict with the provisions of the act.* The court there held the city of Garden City was authorized by G. S. 1949, 8-507 to adopt traffic regulations in addition to those provided in G. S. 1949, 8-508, making it unlawful for any person, who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs, to drive any vehicle within the city and prescribe penalties not in conflict with G. S. 1949, 8-530. Under the *Miller* case a single act may be an offense in violation of a city ordinance, although it is made a public offense by statute, and a violation of such ordinance and statute by the same act constitutes separate offenses and subjects the offender to separate punishment. It should be noted the ordinance and the state statute were identical in defining the prohibited acts.

Kansas cases support the *pre-emption or conflict* theory. In *Trimble v. City of Topeka,* 147 Kan. 111, 75 P. 2d 241, the city of Topeka enacted an ordinance attempting to regulate the occupation of barbering, and the court in determining the power of the city

held the ordinance conflicted with the regulatory acts of the state upon the same subject and nullified the state law. As a consequence the ordinance was held void. The *Trimble* case was followed in *House v. City of Topeka,* 178 Kan. 284, 286 P. 2d 180, where the validity of an ordinance of the city of Topeka prohibiting the sale of any groceries, meats or vegetables on Sunday, and providing penalties therefor, was under attack. Violation of the ordinance was made *a misdemeanor.* The ordinance was held void on the ground it *conflicted with the state law which permitted the sale of groceries, meats and vegetables on Sunday without penalty.* In my opinion this case is authoritative precedent which should control the court's decision herein.

In a more recent decision of this court it was specifically said, "it is within the power of the legislature to define what acts shall constitute crimes." (*State v. Bolin,* 200 Kan. 369, 370, 436 P. 2d 978.)

Powers granted to cities by the Home Rule Amendment to the Kansas Constitution (Art. 12, § 5) preclude municipalities from entering a field of legislation which has been occupied by general legislative enactments of statewide concern applicable uniformly to all cities. (Art. 12, § 5, [*b*], Kansas Constitution; *Capitol Cable, Inc. v. City of Topeka,* 209 Kan. 152, 159, 495 P. 2d 885; and see, *City of Baytown v. Angel,* supra.)

The exercise of the police power by a municipality must be consistent with the general laws of the state. The police power cannot be asserted by a municipality to override the authority of the state from whence its authority comes. (*Kim v. Town of Orangetown,* supra.)

In conclusion it is respectfully submitted that a municipal ordinance cannot permit an act which the state penal system forbids, or forbid an act which the state penal system permits. Under Kansas decisions heretofore cited the test of concurrent legislative and municipal authority is the absence of conflict with the legislative will. (See also, *Maryland & D. C. Rifle & Pistol Ass'n, Inc. v. Washington,* 442 F. 2d 123 [D. C. Cir. 1971]; and *Stine v. Kansas City,* 458 S. W. 2d 601 [Mo. 1970].)

It is respectfully submitted the decision of the lower court declaring the ordinance in question void should be affirmed.